UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

REGLA PEDROSO,

                        Plaintiff,

v.                                                          5:11-CV-1268
                                                            (GTS/ATB)
SYRACUSE CMTY. HEALTH CTR.,

                        Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

REGLA PEDROSO
   Plaintiff, *Pro Se*
401 Breman Avenue
Mattydale, NY 13211

HANCOCK ESTABROOK, LLP                  LINDSEY H. HAZELTON, ESQ.
   Counsel for Defendant
1500 AXA Tower I
100 Madison Street
Syracuse, NY 13202

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently pending before the Court, in this *pro se* employment discrimination action filed by Regla Pedroso ("Plaintiff") against the Syracuse Community Health Center ("Defendant"), is Defendant's motion for summary judgment.  (Dkt. No. 49.)  For the reasons set forth below, Defendant's motion is granted.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Claims

Generally, liberally construed, Plaintiff's Second Amended Complaint asserts three claims against Defendant arising from its termination of her employment as a

Phlebotomist/Clerk, from approximately May 17, 2010, to September 24, 2010, in Syracuse, NY: (1) a claim that Defendant violated 42 U.S.C. § 2000e *et seq.* ("Title VII") by terminating her employment based on her race or color; (2) a claim that Defendant violated Title VII by terminating her employment based on her national origin; and (3) a claim that Defendant violated 29 U.S.C. §§ 621-634(b) ("ADEA") by terminating her employment based on her age. (*See generally* Dkt. No. 41 [Plf.'s Second Am. Compl.].) Familiarity with the factual allegations supporting these claims in Plaintiff's Second Amended Complaint is assumed in this Decision and Order, which is intended primarily for review by the parties. (*Id.*)

   **B.   Undisputed Material Facts**

   Generally, the following facts were asserted and supported by Defendant in its Local Rule 7.1 Statement of Undisputed Material Facts, and either expressly admitted or denied without an accurate supporting record citation by Plaintiff in her Local Rule 7.1 Response. (*Compare* Dkt. No. 49, Attach. 1 [Def.'s Rule 7.1 Statement] *with* Dkt. No. 60 [Plf.'s Rule 7.1 Response].)

   1.     Syracuse Community Health Center ("SCHC") provides healthcare services and patient education to more than 40,000 individuals, many of whom are part of the City of Syracuse's "at risk populations" including the poor, elderly, and Medicaid recipients. (Dkt. No. 49, Attach. 4, at 1 [Williams Decl. at ¶ 2]; Dkt. No. 60, Attach. 2, at 3 [Plf.'s Ex. 1 at 1].)

   2.     Plaintiff first commenced employment with SCHC in 2002 as a Dental Assistant in the Dental Department. (Dkt. No. 49, Attach. 4, at 1 [Williams Decl. at ¶ 3]; Dkt. No. 49, Attach. 2, at 5-6 [Plf.'s Depo. Tr. at 9, 20]; Dkt. No. 49, Attach. 4, at 11 [Def.'s Ex. E]; Dkt. No. 60, Attach. 3, at 1 [Pedroso Decl. at ¶ 1].)

3. In 2009, Plaintiff voluntarily resigned from SCHC. (Dkt. No. 49, Attach. 4, at 1 [Williams Decl. at ¶ 3]; Dkt. No. 49, Attach 2, at 6-7 [Plf.'s Depo. Tr. at 20-21]; Dkt. No. 60, Attach. 3, at 1 [Pedroso Decl. at ¶ 2].)

4. In or about April 2010, Plaintiff reapplied for employment with SCHC as a Phlebotomist/Clerk, and she was rehired effective May 17, 2010. (Dkt. No. 49, Attach. 4, at 1 [Williams Decl. at ¶ 3], Dkt. No. 49, Attach. 4, at 5, 20-24 [Def.'s Exs. A, G, H]; Dkt. No. 49, Attach. 2, at 9-10 [Plf.'s Depo. Tr. at 24-25].)

5. SCHC Lab Manager Dawn Monette, who is white, interviewed Plaintiff and recommended her for employment. (Dkt. No. 49, Attach. 4, at 3 [Williams Decl. at ¶ 6]; Dkt. No. 49, Attach. 3, at 1 [Monette Decl. at ¶ 2]; Dkt. No. 49, Attach. 3, at 7 [Def.'s Ex. I]; Dkt. No. 49, Attach. 2, at 10 [Plf.'s Depo. Tr. at 25].)

6. Pursuant to SCHC policy, the first six (6) months of Plaintiff's employment were deemed an "Introductory Period," in order to assess Plaintiff's suitability for the position. (Dkt. No. 49, Attach. 4, at 2 [Williams Decl. at ¶ 3]; Dkt. No. 49, Attach. 3, at 9 [Def.'s Ex. K]; Dkt. No. 49, Attach. 4, at 23 [Def.'s Ex. H at 2]; Dkt. No. 49, Attach. 2, at 35 [Def.'s Ex. 2, at P-0050]; Dkt. No. 60, Attach. 3, at 23 [Plf.'s Ex. C at 1].)

7. There are several stages to the Phlebotomist/Clerk position: (1) receiving patients and drawing their blood; (2) issuing lab encounters and performing other clerical/data input; and (3) "processing," which is the most complex part of the role because it involves preparing specimens for testing. (Dkt. No. 49, Attach. 3, at 2 [Monette Decl. at ¶ 3]; Dkt. No. 49, Attach. 3, at 8 [Def.'s Ex. J]; Dkt. No. 49, Attach. 2, at 34 [Def.'s Ex. 2 at P-0031]; Dkt. No. 49, Attach. 2, at 11 [Plf.'s Depo. Tr. at 30]; Dkt. No. 60, Attach. 3, at 24 [Plf.'s Ex. C at 2].)

8.      Plaintiff was trained by various individuals, including Ms. Monette, Senior Phlebotomist Brigida Cabral, Richard Evans and LaDashe Roberts. (Dkt. No. 49, Attach. 2, at 11-14, 30 [Plf.'s Depo. Tr. at 30-33, 99]; Dkt. No. 49, Attach. 3, at 3 [Monette Decl. at ¶ 6]; Dkt. No. 60, Attach. 3, at 2 [Pedroso Decl. at ¶ 3].)

9.      Plaintiff had difficulty mastering the initial skills in the drawing area, made errors and often would use the wrong tube, fail to label tubes, or label them incorrectly.  (Dkt. No. 49, Attach. 3, at 2-3 [Monette Decl. at ¶ 4]; Dkt. No. 49, Attach. 2, at 15 [Plf.'s Depo. Tr. at 34]; Dkt. No. 41, at 8 [Plf.'s Second Am. Compl. at ¶ 11]; Dkt. No. 49, Attach. 2, at 32 [Def.'s Ex. 2 at P-0028]; Dkt. No. 49, Attach. 4, at 6-7 [Def.'s Ex. B]; Dkt. No. 60, Attach. 3, at 3-4 [Pedroso Decl. at ¶¶ 6-7]; Dkt. No. 60, Attach. 3, at 32 [Plf.'s Ex. E at E].)

10.      Employees who perform a processing role are an additional line of defense, and must be able to discover when specimens might have been labeled or collected incorrectly. (Dkt. No. 49, Attach. 3, at 2 [Monette Decl. at ¶ 3]; Dkt. No. 49, Attach. 3, at 8 [Def.'s Ex. J]; Dkt. No. 49, Attach. 4, at 23 [Def.'s Ex. H at D-00016].)

11.      Plaintiff did not adequately master the initial skills to allow her to move into the processing department. (Dkt. No. 49, Attach. 3, at 2-3 [Monette Decl. at ¶ 4]; Dkt. No. 49, Attach. 2, at 16-17 [Plf.'s Depo. Tr. at 39-40]; Dkt. No. 60, Attach. 3, at 24 [Plf.'s Ex. C at D-0058]; Dkt. No. 60, Attach. 3, at 32 [Plf.'s Ex. E at E]; Dkt. No. 60, Attach. 3, at 37 [Plf.'s Ex. G].)

12.      A review of Plaintiff's performance in late July 2010 indicated that she was not performing at a satisfactory level and that she was showing no signs of improvement. (Dkt. No. 49, Attach. 3, at 9 [Def.'s Ex. K]; Dkt. No. 49, Attach. 4, at 7-9 [Def.'s Exs. B at P-0042, and C

at P-0044-0045]; Dkt. No. 49, Attach. 3, at 3-4 [Monette Decl. at ¶¶ 5, 7]; Dkt. No. 60, Attach. 3, at 3 [Pedroso Decl. at ¶ 6].)

13.     According to SCHC policy, Ms. Monette, as a direct supervisor, did not have the authority to terminate an employee–only the ability to recommend a termination; her recommendation that Plaintiff be terminated was reviewed and approved by several levels of management, including Clinical Administrator Angella Timothy, Medical Director Dr. Chima Chinuma, Human Resources Director Craig Williams, Senior Vice President and Corporate Health Officer Dr. Diane Green-El, Chief Administrative Officer Crystal Jordan, and President and CEO Dr. Ruben Cowart–each of whom is Black.  (Dkt. No. 49, Attach. 3, at 4-5 [Monette Decl. at ¶¶ 7, 9]; Dkt. No. 49, Attach. 4, at 2-3 [Williams Decl. at ¶¶ 4, 6]; Dkt. No. 40, Attach. 4, at 8 [Def.'s Ex. C].)

14.     Plaintiff is Black, is from Cuba, and was born in 1965; she turned 45 in 2010. (Dkt. No. 49, Attach. 2, at 4 [Plf.'s Depo. Tr. at 7]; Dkt. No. 41, at 6, 11 [Plf.'s Second Am. Compl. at ¶¶ 1, 7]; Dkt. No. 60, Attach. 3, at 1 [Pedroso Decl. at ¶ 1].)

15.     Ms. Monette is approximately nine years older than Plaintiff.  (Dkt. No. 49, Attach. 3, at 4 [Monette Decl. at ¶ 7]; Dkt. No. 60, Attach. 3, at 2 [Pedroso Decl. at ¶ 3]; Dkt. No. 49, Attach. 2, at 4 [Plf.'s Depo. Tr. at 7].)

16.     Other individuals working under Ms. Monette's supervision in the lab in 2010 included the following: (1) Richard Evans, who was Black and from Jamaica; (2) Brigida Cabral, the senior phlebotomist who is also Black and self-identifies herself as Hispanic/Latino; (3) LaDashe Roberts, who is Black; and (4) George Rinu who was from India. (Dkt. No. 49, Attach. 3, at 4 [Monette Decl. at ¶ 7]; Dkt. No. 49, Attach. 2, at 14, 25-26 [Tr. 33, 73-74]; Dkt. No. 49, Attach. 4, at 3 [Williams Decl. at ¶ 6].)

17.     Even if younger than Plaintiff, other employees in the lab had more experience than Plaintiff and progressed more quickly that her.  (Dkt. No. 49, Attach. 2, at 19-21 [Plf.'s Depo. Tr. at 42-44]; Dkt. No. 49, Attach. 3, at 3-4 [Monette Decl. at ¶ 6]; Dkt. No. 41, at 7 [Plf.'s Second Am. Compl. at ¶ 6].)

18.     Pursuant to the SCHC policy, it was the responsibility of managers and directors to ensure that each new employee receive a departmental orientation which included an introduction to co-workers and staff and a tour of the facility; it is the position of Mr. Williams (the Human Resources Director) that, because she was a *re-hired* employee, Plaintiff would not have been required to re-attend a departmental orientation.  (Dkt. No. 60, Attach. 2, at 28 [Plf.'s Ex. 3, at ¶¶ 1-2]; Dkt. No. 49, Attach. 4, at 2 [Williams Decl. ¶ 3]; *cf.* Dkt. No. 60, Attach. 2, at 29 [Plf.'s Ex. 3, at ¶ 7, making the "Introductory Period," not the "Departmental Orientation," mandatory for re-hired employees].)

19.     On or about September 24, 2010, Mr. Williams met with Plaintiff to advise her of her termination; she did not raise any claims of disparate treatment during the exit interview. (Dkt. No. 49, Attach. 4, at 2-3 [Williams Decl. at ¶ 5]; Dkt. No. 49, Attach. 4, at 10-11 [Def.'s Exs. D, E].)

20.     On or about September 29, 2010, Plaintiff filed an administrative complaint with the New York State Division of Human Rights ("SDHR") which alleged only race discrimination (not age discrimination or national-origin discrimination). (Dkt. No. 49, Attach. 4, at 3 [Williams Decl. at ¶ 7]; Dkt. No. 49, Attach. 2, at 18-19 [Plf.'s Depo. Tr. at 41-42]; Dkt. No. 49, Attach. 4, at 12-19 [Def.'s Ex. F].)

21.     The SDHR investigated the case and found no evidence of discrimination and issued a No Probable Cause Determination on or about May 2, 2011. (Dkt. No. 49, Attach. 4, at 20-24 [Def.'s Exs. G, H].)

## C.     Defendants' Motion

Generally, in support of its motion for summary judgment, Defendant asserts the following three arguments: (1) Plaintiff's race discrimination claim under Title VII must be dismissed because she has failed to adduce admissible record evidence establishing a *prima facie* case for such claim (i.e., she has shown neither she performed her job satisfactorily, nor that Defendant's adverse employment decision was motivated at least in part by an impermissible reason); (2) Plaintiff's national origin discrimination claim under Title VII must be dismissed because (a) she failed to assert that claim (or any reasonably related claim) in the administrative charges that she filed with the EEOC, and (b) she has failed to adduce admissible evidence establishing such a claim; and (3) Plaintiff's age discrimination claim under the ADEA must be dismissed because (a) she failed to assert such claim (or any reasonably related claim) in the administrative charges that she filed with the EEOC, and (b) she has failed to adduce admissible record evidence establishing such a claim.  (*See generally* Dkt. No. 50 [Def.'s Memo. of Law].)

Generally, in response to Defendant's motion for summary judgment, Plaintiff failed to specifically oppose any of the three legal arguments asserted by Defendant in its motion for summary judgment.   (*See generally* Dkt. No. 60, Attach. 1 [Plf.'s Opp'n Memo. of Law].) Instead, Plaintiff argues as follows: (1) she is from Cuba, is Black, and was born in 1965; (2) Defendant first hired Plaintiff as a Dental Assistant in 2002 but Plaintiff resigned from the position in 2009 for personal reasons; (3) Defendant rehired Plaintiff as a Phlebotomist/Clerk in 2009 after Plaintiff reapplied for employment with Defendant ; (4) Ms. Monette supervised Plaintiff's work in Defendant's laboratory during Plaintiff's "introductory period"; (5) Ms. Monette is white; (6) on approximately June 9, 2010, Defendant hired new phlebotomists who

were "black light skinned, light skinned and Indian Americans, younger than 30, Favored [sic] by the supervisor"; (7) the new employees received training and rotating schedules in the processing department; (8) Plaintiff asked Ms. Monette to be trained and scheduled for work in the processing department and Ms. Monette denied the request; (9) Plaintiff was left alone in the laboratory during lunch hours, against laboratory policy; (10) Ms. Monette evaluated Plaintiff's work performance and found that Plaintiff made "continuous errors" but nonetheless "begged for [Plaintiff's] help"; and (11) on September 24, 2010, Mr. Craig Williams, Director of Human Resources, met with Plaintiff and terminated her employment with Defendant because of Plaintiff's "poor work ethic." (*Id.*)

Generally in its reply, Defendant asserts the following six arguments: (1) in her Rule 7.1 Response, Plaintiff admitted several significant material facts asserted in Defendant's Rule 7.1 Statement of Material Facts, thus entitling Defendant to summary judgment; (2) Plaintiff is barred from bringing a claim based on national origin discrimination because (a) she has admitted that her administrative complaint dually filed with the New York State Division of Human Rights and the EEOC did not allege discrimination on the basis of national origin, and (b) she has not offered any explanation as to why her national-origin claim should proceed given her admitted failure to assert the claim at the administrative level; (3) any claim on the basis of age discrimination must be dismissed because (a) she has admitted she did not allege age discrimination on her administrative complaint dually filed with the New York State Division of Human Rights and the EEOC, and (b) she failed to offer any reason why her age-discrimination claim should be allowed to proceed at this time in light of such failure; (4) the so-called "same actor inference" (i.e., the point of law that, when the same actor hires a person already within the

protected class, and then later fires that same person, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire) bolster's Defendant's argument that Defendant's conduct was without discriminatory animus; (5) even assuming for the sake of argument that Plaintiff could establish a *prima facie* case for discrimination, she still cannot refute the legitimate business reasons offered by Defendant for her termination, nor can she otherwise demonstrate that those reasons were pretextual; and (6) although Plaintiff is a *pro se* litigant, she has provided unsupported and conclusory allegations that are insufficient to withstand summary judgment as a matter of law.  (*See generally* Dkt. No. 61, Attach. 1 [Def.'s Reply Memo. of Law].)

## II.     RELEVANT LEGAL STANDARDS

### A.     Legal Standard Governing Motions for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact."  *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the moving party has met this initial responsibility, the nonmoving party must come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(a),(c),(e).

A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the novmoving party." *Anderson*, 477 U.S. at 248. As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted). As the Supreme Court has famously explained, "[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

Implied in the above-stated burden-shifting standard is the fact that, where a nonmoving party willfully fails to adequately respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that nonmoving party is proceeding *pro se*.[1] (This is because the Court extends special solicitude to the *pro se* litigant largely by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.)[2] As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules.[3]

---

[1]     *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

[2]     *Cusamano*, 604 F. Supp.2d at 426 & n.3 (citing cases).

[3]     *Cusamano*, 604 F. Supp.2d at 426-27 & n.4 (citing cases).

Of course, when a non-movant has failed to respond to a movant's motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, the Court must (1) determine what material facts, if any, are *disputed* in the record presented on the movant's motion, and (2) assure itself that, based on those *undisputed* material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3). What the non-movant's failure to respond to the movant's motion does is lighten the movant's burden on its motion.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a moving party's statement to be admitted, to the extent that those facts are supported by evidence in the record, where the nonmoving party has willfully failed to properly respond to that statement[4]–even where the nonmoving party was proceeding *pro se* in a civil rights case.[5]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law (submitted in support of its motion for summary judgment), the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[6] Stated another

---

[4]     Among other things, Local Rule 7.1(a)(3) requires that the nonmoving party file a response to the moving party's Statement of Material Facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

[5]     *Cusamano*, 604 F. Supp.2d at 427 & n.6 (citing cases).

[6]     *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by

way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant's

burden with regard to that argument is lightened, such that, in order to succeed on that argument,

the movant need only show that the argument possess facial merit, which has appropriately been

characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed

motion is unopposed and the Court determined that the moving party has met to demonstrate

entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL

3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v.

Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.)

(collecting cases).

### B. Legal Standard Governing Plaintiff's Title VII Claims

Because Plaintiff has failed to address the legal arguments contained in Defendant's

memorandum of law, and has also failed to provide any legal argument in support of her claims,

the Court will briefly recite the applicable legal standards in this Decision and Order. (*See

generally* Dkt. No. 50 [Def.'s Memo. of Law]; Dkt. No. 60, Attach. 1 [Plf.'s Opp'n Memo. of

Law]; Dkt. No. 61 [Def.'s Opp'n Memo. of Law].)

As articulated in *McDonnell Douglas Corp. v. Green*, the basic allocation of burdens and

order of presentation of proof in a Title VII employment discrimination case is shifting. *See St.

Mary's Honor Ctr. V. Hicks*, 509 U.S. 502, 506 (1993), *citing McDonnell Douglas Corp. v.

Green*, 411 U.S. 792, 802 (1973). First, the plaintiff must establish a *prima facie* case of

---

plaintiff to the granting of summary judgment for defendants with regard to the claims that the
arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-
0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's
failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a
concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

discrimination by a preponderance of the evidence. *Hicks*, 509 U.S. at 506; *see also Collins v. New York City Transit Auth.*, 305 F.3d 113, 118 (2d Cir. 2005); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). To establish a *prima facie* case under the *McDonnell Douglas* scheme, a plaintiff must demonstrate the following: (1) membership in a protected class; (2) qualification for the position; (3) an adverse employment action; and (4) circumstances surrounding such adverse action that give rise to an inference of discrimination. *McDonnell Douglas Corp.,* 411 U.S. at 802; *see also Collins*, 305 F.3d at 118.

Second, after the plaintiff has established a *prima facie* case, a presumption exists that the employer unlawfully discriminated against the plaintiff; and the "burden then . . . shift[s] to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp.*, 411 U.S. at 802; *see also Hicks*, 509 U.S. at 506; *Burdine*, 450 U.S. at 254. Specifically, the defendant "must clearly set forth, through the introduction of admissible evidence," reasons for its actions which, "if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Burdine*, 450 U.S. at 248. It is not necessary that the defendant persuade the court that the defendant actually acted based on those proffered reasons; the evidence is sufficient if it raises a genuine issue of fact as to whether it discriminated against the plaintiff. (*Id.*) Determining that a defendant has met its burden of production, thereby rebutting any legal presumption of intentional discrimination, cannot involve assessing the witnesses' credibility. *Hicks*, 509 U.S. at 509.

Third, if the defendant meets this burden, the presumption the prima facie case created is rebutted and "drops from the case," rendering that shifted burden of production irrelevant. *Hicks*, 509 U.S. at 507. The plaintiff then must prove by a preponderance of the evidence that the

legitimate reasons the defendant offered to explain the plaintiff's rejection were not its true reasons. *Burdine*, 450 U.S. at 248; *see also Hicks*, 509 U.S. at 515. "The ultimate question is discrimination *vel non*." *Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 714 (1983). Although the *McDonnell Douglas* scheme therefore shifts the burden of production to the defendant in the third step, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Hicks*, 509 U.S. at 507, *citing Burdine*, 450 U.S. at 253.

##### C.    Legal Standard Governing Plaintiff's Right to Sue Under Title VII and/or the ADEA

Under both Title VII and the ADEA, the law in this Circuit permits a plaintiff to bring private suit in federal court only if she has timely filed a complaint with the EEOC and obtained a right-to-sue letter. *See* 42 U.S.C. § 2000e-5(e), (f)(1); 29 U.S.C. § 626(d)(1); *Williams v. New York City Hous. Auth.*, 435 F.3d 67, 70 (2d Cir. 2006) ("Exhaustion is ordinarily "an essential element . . . ."). A litigant must therefore file administrative charges with the EEOC within the 300-day statute of limitations to sue under Title VII or the ADEA. 42 U.S.C. 2000e-5(e); *see Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir.1993) (Title VII); *Miller v. Int'l Tel.*, 755 F.2d 20, 23 (2d Cir. 1985) (ADEA). When a plaintiff fails to file a timely charge with the EEOC, the claim is time barred and should be dismissed either for failure to exhaust administrative remedies, *see Gomes v. Avco Corp.*, 964 F.2d 1330, 1332-33 (2d Cir. 1992), or as time barred. *See Butts*, 990 F.2d at 1401 (Title VII); *Miller*, 755 F.2d at 23 (ADEA).

However, there is an exception to the requirement that a plaintiff exhaust all administrative remedies before bringing suit under Title VII or the ADEA. *Cornwell v. Robinson*, 23 F.3d 694, 706 (2d Cir. 1994), *see Ximines v. George Wingate High Sch.*, 516 F.3d

156, 158 (2d. Cir 2008). Specifically, a plaintiff can raise any claim that is "reasonably related" to a claim plaintiff timely filed with the EEOC.[7] *Ximines*, 516 F.3d at 158. The Second Circuit has found that a "claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made."[8] *Fitzgerald v. Henderson*, 251 F.3d 345, 359-60 (2d Cir. 2001). The focus of the inquiry should be on "the factual allegations made in the EEOC charge itself, describing the discriminatory conduct about which a plaintiff is grieving." *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003); *see also Ximines*, 516 F.3d at 158. The foremost question is "whether the complaint filed with the EEOC gave the agency adequate notice to investigate discrimination on [all] bases." *Ximines*, 516 F.3d at 158 (citing *Deravin*, 335 F.3d at 201). That a plaintiff has filed a complaint of discrimination on the basis of race or national origin "does not automatically suffice to alert the agency to investigate other incidences" or types of discrimination. *Id.*

---

[7] The Second Circuit has in fact recognized three situations where claims not alleged in an EEOC charge are sufficiently related to the allegations in the charge so that it would be unfair to civil rights plaintiffs to bar such claims. *Butts v. City of New York Dept. of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402 (2d. Cir 1993) (superseded by statute on other grounds). Each of the three situations is grounded in common notions of fairness to civil rights litigants, although their "reasonableness" derives from differing rationales. *Butts*, 900 F.2d at 1402. The first situation is applicable to the present case and is discussed in greater detail above. The second situation (which is not relevant in this case) is one in which a plaintiff alleges retaliation by an employer against an employee for filing an EEOC charge. *See Malarkey v. Texaco, Inc.*, 983 F.2d 1204 (2d. Cir. 1993). The third situation (which also is not relevant in this case) is where a plaintiff alleges further incidents of discrimination in the future carried out in exactly the same manner plaintiff alleged in the EEOC charge. *See Almendral v. New York State Office of Mental Health*, 743 F.2d 963, 967 (2d Cir. 1981).

[8] Because Plaintiff in this case is proceeding *pro se*, it is important to note that the 'reasonably related' exception to the exhaustion requirement "is essentially an allowance of loose pleading" and is based on the recognition that "EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [she] is suffering." *Butts*, 990 F.2d at 1402 (alteration in the original) (superseded by statute on other grounds). *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006).

# III. ANALYSIS

## A. Whether Plaintiff's Race Discrimination Claim Under Title VII Should be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memoranda of law. (Dkt. No. 50 [Def.'s Memo. of Law]; Dkt. No. 61, Attach. 1 [Def.'s Reply Memo. of Law].) The Court would add only four points.

First, in her Rule 7.1 Response, Plaintiff has willfully failed to deny the properly supported factual assertions contained in Defendant's Rule 7.1 Statement of Material Facts. For example, Plaintiff does the following: (1) denies the facts asserted in Paragraphs 1, 5, 7, 8, 10, 11, 12, 15, 18 and 21 of Defendant's Rule 7.1 Statement but fails to provide an accurate citation to any portion of the record that controverts those facts; (2) admits or "supports" the facts asserted in Paragraphs 2, 3, 4, 6, 9 and 13, but inexplicably "denies" the evidence cited by Defendant in support of those facts; and (3) altogether omits responses to Paragraphs 16 and 20. (*See generally* Dkt. No. 60.)[9] As a result, each of Defendant's factual assertions in its Rule 7.1 Statement is deemed admitted by Plaintiff, pursuant to Local Rule 7.1(a)(3). *See, supra,* Part II.A. of this Decision and Order. The Court notes that, even if Defendant's factual assertions had not been deemed admitted by Plaintiff, the Court would adopt those factual assertions, because it has been unable to find in the record any admissible evidence controverting those factual

---

[9] The Court finds that Plaintiff's failure was willful for three reasons. First, Defendant gave Plaintiff adequate notice of her duty to comply with Local Rule 7.1(a)(3). (Dkt. No. 49, Attach. 2, at 36.) Second, on October 24, 2011, the Clerk's Office supplied Plaintiff with a copy of the Northern District's *Pro Se* Handbook, which contains a notice of the consequences of failing to properly oppose a motion for summary judgment, and refers to Local Rule 7.1. (Docket Entry for 10/25/11.) *See also* United States District Court for the Northern District of New York *Pro Se* Handbook, at 41-42, http://www.nynd.uscourts.gov/documents/ProSeHandbook2008.pdf. Third, between March 8, 2013 and April 29, 2013, the Court granted Plaintiff four extensions of time to submit her response to Defendant's motion, and accepted for filing that response despite the fact that it was filed 10 days after the expiration of the last deadline. (Dkt. Nos. 53, 55, 57, 59; Docket Entry for 5/22/2013.)

assertions.[10]

Second, not only were the facts asserted in Defendant's Rule 7.1 Statement not sufficiently opposed by Plaintiff, the legal arguments in Defendant's memorandum of law were not specifically opposed by Plaintiff, thus lightening Defendant's burden with regard to those legal arguments (which it has met). *See, supra,* Part II.A. of this Decision and Order.

Third, no reasonable factfinder could conclude that Defendant subjected Plaintiff to racial discrimination based merely on (1) the fact that Plaintiff is Black while her supervisor, Ms. Monette, is white, and (2) the fact that Ms. Monnette told Plaintiff she would have a hard time finding a job "because she is black." *See Soliman v. Deutsche Bank AG*, No. 03-CV-0104, 2004 WL 1124689, at *9 (S.D.N.Y. May 20, 2004) ("[S]tray remarks are insufficient to raise an inference of discrimination."). This is particularly true given the following facts: (1) Defendant previously employed Plaintiff (but Plaintiff decided to resign from her first position for personal reasons); (2) Ms. Monett re-hired Plaintiff; (3) more than five individuals, including Defendant's President and CEO–and all of whom are Black–reviewed and agreed with Ms. Monette's recommendation that Plaintiff be terminated; and (4) in addition to Plaintiff, Ms. Monette also supervised, without incident, (a) Richard Evans, who is Black and from Jamaica, (b) Brigida Cabral, the senior phlebotomist, who is Black and self-identifies as Hispanic/Latino, (c) LaDashe Roberts, who is Black, and (d) George Rinu, who was from India. (*Id.*)

---

[10] The Court notes that it has checked each of the citations contained in Defendant's Statement of Material Facts, and those contained in Plaintiff's Responses. In addition, the Court has kept watchful eye for evidence of a dispute of material fact, while reviewing the record. The Court need not, and shall not, go any further. It is not the duty of a congested district court to *sua sponte* scour some 140 pages of record evidence for a dispute of material fact. *Stephenson Equip. v. ATS Specialized, Inc.*, 10-CV-1517, 2013 WL 4508444, at *8 & n.12 (N.D.N.Y. Aug. 23, 2013) (Suddaby, J.).

Fourth, Plaintiff cannot establish she was qualified to remain employed with Defendant as a phlebotomist, or alternatively, that Plaintiff cannot rebut the legitimate business reasons Defendant offered to explain the termination. No reasonable factfinder could find in favor of the Plaintiff based on the following facts: (1) she was within the six-month "Introductory Period" of her employment with Defendant, which was designed to assess her suitability as an employee; (2) she had difficulty mastering the initial skills in the drawing area, made errors and often would use the wrong tube, fail to label tubes, or label them incorrectly; (3) she did not adequately master the skills necessary to allow her to work in Defendant's processing department; (4) she received, and failed to challenge, a performance review in late July 2010 that indicated she was not performing satisfactorily and was not improving; and (5) more-recently hired phlebotomists continued to surpass her performance in laboratory and processing work, were better trained and had more experience.

For all these reasons, Plaintiff's claim of racial discrimination under title VII is dismissed.

### B. Whether Plaintiff's Claim for National Origin Discrimination Should be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memoranda of law. (Dkt. No. 50 [Def.'s Memo. of Law]; Dkt. No. 61, Attach. 1 [Def.'s Reply Memo. of Law].) The Court would add only three points.

First, as explained above in Part III.A. of this Decision and Order, Plaintiff's failed to sufficiently oppose the facts asserted in Defendant's Rule 7.1 Statement, and she has failed to specifically oppose the legal arguments in Defendant's memorandum of law, thus lightening Defendant's burdens with regard to those facts and legal arguments (which it has met).

Second, Plaintiff did not assert a national origin discrimination claim in her dually filed complaint with the SDHR or EEOC. For example, the box for "national origin" ("Nacionalidad")

is not checked in Plaintiff's administrative complaint. (Dkt. No. 49, Attach. 4, at 12-14 [Def.'s Ex. F].) Moreover, in the administrative complaint and accompanying documents, no where does Plaintiff mention her nationality, Cuban or otherwise, the national origin of her colleagues or supervisors, or that the subject of national origin was ever raised during her employment with Defendant. (Dkt. No. 49, Attach. 4, at 12-21 [Def.'s Exs. F, G].)

Third, while Plaintiff's Second Amended Complaint conclusorily references her national origin, she has provided no evidentiary support from which a reasonable factfinder could conclude that the circumstances surrounding her termination give rise to an inference of national origin-discrimination.

For all of these reasons, Plaintiff's claim of national origin discrimination under Title VII is dismissed.

**C.   Whether Plaintiff's Claim of Age Discrimination Under the ADEA Should Be Dismissed**

After carefully considering the matter, the Court answers this question in the affirmative for each of the reasons stated in Defendant's memoranda of law. (Dkt. No. 50 [Def.'s Memo. of Law]; Dkt. No. 61, Attach. 1 [Def.'s Reply Memo. of Law].) The Court would add only three points.

First, as explained above in Part III.A. of this Decision and Order, Plaintiff failed to sufficiently oppose the facts asserted in Defendant's Rule 7.1 Statement, and she has failed to specifically oppose the legal arguments in Defendant's memorandum of law, thus lightening Defendant's burdens with regard to those facts and legal arguments (which it has met).

Second, Plaintiff did not assert an age-discrimination claim in her dually filed complaint with the SDHR or EEOC. For example, the box for "age" ("Edad") is not checked in Plaintiff's administrative complaint. (Dkt. No. 49, Attach. 4, at 12-14 [Def.'s Ex. F].) Rather, Plaintiff

checked the box for "race" ("Raza/Color o Etnia"). (*Id.*) In the accompanying documents, Plaintiff does not mention the words "age," "years" or "old" in relation to any of her claims. (Dkt. No. 49, Attach. 4, at 12-21 [Def.'s Exs. F, G].) Nowhere in Plaintiff's administrative complaint does she provide evidentiary support for her claim that Defendant discriminated against her on the basis of her age. (*Id.*)

Third, while Plaintiff's Second Amended Complaint conclusorily alleges age discrimination, she has provided no evidentiary support from which a reasonable factfinder could conclude that the circumstances surrounding her termination give rise to an inference of age discrimination.

For all of these reasons, Plaintiff's claim for age discrimination under the ADEA is dismissed.

**D.      Whether Plaintiff's Claims for National-Origin Discrimination and Age Discrimination Should Be *Sua Sponte* Dismissed on the Alternative Ground of Lack of Subject-Matter Jurisdiction**

A district court has the authority, indeed the duty, to *sua sponte* dismiss a claim based on lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C.*, 565 F.3d 56, 62 (2d Cir. 2009) ("If subject matter jurisdiction is lacking and no party has called the matter to the court's attention, the court has the duty to dismiss the action sua sponte."). As a result, the Court will *sua sponte* review Plaintiff's claims for lack of subject-matter jurisdiction.

A district court has jurisdiction to hear employment discrimination claims only that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is "reasonably related" to that alleged in the EEOC charge. *See Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401-02 (2d Cir. 1993) (superseded by statute on other

grounds); *Almendral v. New York State Office of Mental Health*, 743 F.2d 963, 967 (2d Cir. 1984); *Goodman v. Heublein, Inc.*, 645 F.2d 127, 131 (2d Cir. 1981); *Kirkland v. Buffalo Bd. of Educ.*, 622 F.2d 1066, 1068 (2d Cir. 1980). This "exhaustion requirement" is an essential element of Title VII's and the ADEA's statutory scheme; "[t]he purpose of the notice provision, which is to encourage settlement of discrimination disputes through conciliation and voluntary compliance, would be defeated if a complainant could litigate a claim not previously presented to and investigated by the EEOC." *Miller v. Int'l Tel.*, 755 F.2d 20, 26 (2d. Cir. 1985); *see also Stewart v. United States Immigration & Naturalization Servs.*, 762 F.2d 193, 198 (2d Cir. 1985) (stating that the purpose of the exhaustion requirement is to give the administrative agency the opportunity to investigate, mediate, and take remedial action).

As the Court discussed above in Parts III.B. and III.C. of this Decision and Order, Plaintiff failed to assert the claims of age and national-origin discrimination in the administrative complaint she filed with the EEOC. Such claims were not investigated by the EEOC, nor were such claims within the scope of the investigation that reasonably could have been expected to grow out of the complaint Plaintiff filed with the EEOC. Moreover, Plaintiff's claims of national-origin and age discrimination are not based on conduct subsequent to the EEOC charge, which is "reasonably related" to that alleged in the EEOC charge.

For all of these reasons, Plaintiff's claims for national origin discrimination under Title VII and age discrimination under the ADEA are alternatively dismissed for lack of subject-matter jurisdiction.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 49) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Second Amended Complaint (Dkt. No. 41) is <u>**DISMISSED**</u>.

Dated: August 13, 2014
       Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge